IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY          )
  COMMISSION,                                                )
                                                  )
                Plaintiff,                          )          **CIV NO.:**_____
                                                  )
     v.                                                        )
                                                  )
                                                  )
PITRE INC. d.b.a. PITRE                                 )
BUICK/PONTIAC,                                          )
                                                  )
                                                  )
            Defendant.                         )

_____

## COMPLAINT AND JURY TRIAL DEMAND
_____

## NATURE OF THE ACTION

      This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil

Rights Act of 1991 to correct alleged unlawful employment practices on the basis of sex and

engagement in protected activity, and to provide appropriate relief to Charging Parties Richard

Yob and Sasha Dulkerian (referred collectively as "Charging Parties") and a class of male

employees who were adversely affected by such practices during their employment with

Defendant Pitre Inc.  Plaintiff Equal Employment Opportunity Commission ("EEOC" or "the

Commission") alleges that Charging Parties and a class of men were subjected to a pattern or

practice of sexual harassment while employed at Defendant's car dealership located in

Albuquerque, New Mexico, including, but not limited to, verbal sexual harassment, including

sexual comments and innuendo, unwelcome and assaultive physical touching, retaliation for

reporting or complaining about the sexual harassment, and an overall work atmosphere which

fostered and condoned sexual harassment, all of which created a hostile work environment

because of sex, male.  The Commission also alleges that some of the men, including Charging

Party Richard Yob, were forced to resign their employment due to intolerable working

conditions. Charging Parties and a class of men also reported and objected to the sexual

harassment and were subjected to retaliatory actions, including but not limited to actions that

affected their salary and commission, and termination from their employment with Defendant

because of their engagement in protected activity.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343, and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1),

706(f)(3), and 707 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5

(f)(1) and (3), and § 2000e-6 ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42

U.S.C. § 1981a.

2.      At all relevant times, the employment practices alleged to be unlawful were

committed within the jurisdiction of the United States District Court for the District of New

Mexico.

## PARTIES

3.      EEOC is the agency of the United States of America charged with the

administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring

this action by Sections 706(f)(1), 706(f)(3), and 707 of Title VII, 42 U.S.C. § 2000e-5(f)(1) and

(3), and § 2000e-6.

4.      At all relevant times, Defendant Pitre Inc. has been a New Mexico corporation

continuously doing business in Albuquerque, New Mexico, and has continuously employed at

least 15 employees.

5.      At all relevant times, Defendant has continuously been and is now an employer

engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h)

of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h).

6.      At all relevant times, Defendant Pitre Inc. ("Pitre Albuquerque") was an

integrated enterprise with Pitre Santa Fe. LLC ("Pitre Santa Fe"), Pitre Chrysler, Plymouth,

Scottsdale, Inc.("Pitre Scottsdale"), R.G.P. Auto Inc. ("RGP Auto"), and 21 Bell, LLC. ("21

Bell").

7.      At all relevant times, Pitre Albuquerque employed Charging Parties and the group

of males adversely affected by the alleged unlawful employment practices.

### GENERAL ALLEGATIONS

8.      More than thirty days prior to the institution of this lawsuit, Richard Yob ("Yob")

and Sasha Dulkerian ("Dulkerian") filed charges with the Commission alleging violations of

Title VII by Defendants.

9.      The Commission provided Defendant with notice of the charges of

discrimination.

10.     The Commission conducted an investigation regarding the allegations made in the

charges of discrimination.

11.     Based on evidence adduced during its investigation, the Commission issued

letters of determination as to both charges of discrimination.

3

12.     Prior to filing this lawsuit the Commission invited Defendant to engage with EEOC in informal methods of conference, conciliation, and persuasion, to reach an agreement on how to eliminate and remedy the alleged unlawful practices.

13.     As part of the conciliation process, the Commission provided Defendant with a settlement proposal, indicating the kinds of relief the Commission was requesting as part of a conciliation agreement.

14.     The Commission's efforts to resolve the case informally in conciliation were unsuccessful.

15.     The Commission provided Defendant notice that the conciliation efforts had failed.

16.     All conditions precedent to the institution of this lawsuit have been fulfilled.

17.     During the relevant time period, Defendant was one of several related car dealerships in Arizona and New Mexico,

       a.  Robert G. Pitre is the owner of Pitre Albuquerque, Pitre Santa Fe, Pitre Scottsdale, RGP Auto, and 21 Bell (referred collectively as "Pitre Entities").

       b.  Upon information and belief, all five Pitre Entities were all managed by PAM Management, L.L.C., also owned by Robert G. Pitre.

       c.  Upon information and belief, all five Pitre Entities bought and sold assets through Pitre Holdings, also owned by Robert G. Pitre.

       d.  The five Pitre Entities share some common corporate officers.

18.     The Pitre Entities, together with PAM Management, L.L.C. and Pitre Holdings constitute an integrated enterprise.

19.     The Pitre Entities collectively employed over 300 employees in their car dealerships in New Mexico and Arizona.

20.     At all times relevant to this lawsuit, Pitre Albuquerque employed James Gallegos ("Gallegos") as a lot attendant.

21.     At all times relevant to this lawsuit, Pitre Albuquerque employed General Manager Charles Ratliff ("GM Ratliff") to oversee operations of the Albuquerque dealership.

22.     At all times relevant to this lawsuit, Pitre Albuquerque employed Sales Manager Chuck Ratliff ("SM Ratliff"), who directly supervised the sales associates at the Albuquerque car dealership.

23.     At all times relevant to this lawsuit, Pitre Albuquerque employed Randy Powers as the Service Manager, who directly supervised the service associates at the Albuquerque car dealership.

24.     At all times relevant to this lawsuit, Tom Stever was employed as the Human Resources Director and Chief Financial Officer for Pitre Albuquerque.

25.     Beginning in February of 2010, Charging Party Yob was employed by Pitre Albuquerque as a sales associate.

26.     Throughout his employment at Pitre Albuquerque, Yob was supervised by SM Ratliff.

27.     Beginning in September 2007, Charging Party Dulkerian was employed by Pitre Albuquerque as an Assistant Service Manager.

28.     Throughout his employment at Pitre Albuquerque, Dulkerian was supervised by Randy Powers.

29.    Since at least February 2010, Charging Party Yob was sexually harassed by Gallegos.

30.    Since the later part of 2007, Charging Party Dulkerian was sexually harassed by Gallegos.

31.    Since at least 1998 and through at least August 6, 2010, a group of male employees were sexually harassed by Gallegos.

32.    Examples of the sexually harassing conduct suffered by Charging Parties and a group of aggrieved male employees include, but are not limited to:

      a.    Gallegos bit at least one of the Charging Parties and other male employees on the penis;

      b.    Frequently, Gallegos grabbed, slapped and/or touched Charging Parties and other male employees on the buttocks, penis or other parts of their bodies.

      c.    Frequently Gallegos exposed his penis and bare buttocks to Charging Parties and other male employees, including but not limited to slapping his penis against the front storeroom window;

      d.    Frequently Gallegos solicited Charging Parties and other male employees to engage in sexual relations and/or sexual acts with Gallegos in exchange for money;

      e.    Frequently, Gallegos would kneel in front of a male employee, try to pull the employee's pants down, and attempt or pretend to perform oral sex on the male employee;

f.  Frequently, Gallegos attempted and/or pulled down the pants of Charging

Parties and other male employees;

g.  Gallegos made frequent unwelcome sexual comments, sexual jokes, or sexual

innuendo to Charging Parties and other men, including but not limited to,

overtures to have sex with Gallegos;

h.  Gallegos wrestled down male employees to touch their private parts or to

force their face into his (Gallegos) crotch area; and

i.  Frequently, Gallegos made comments about the penis size and/or buttocks of

several male employees.

33.    Gallegos' sexual actions and comments occurred at least several times each week, sometimes several times in a day.

34.    Gallegos' sexual comments and touching were not invited or welcomed by male employees at Pitre Albuquerque.

35.    Gallegos' sexual comments and touching were offensive to male employees at Pitre Albuquerque.

36.    Gallegos offensive sexual actions and comments were open and notorious in the workplace.

37.    Gallegos offensive sexual actions and comments were frequently done in the presence of managers who did nothing to stop the conduct.

38.    The workplace environment at Pitre Albuquerque was permeated with sexually offensive conduct towards male employees.

39.     Graphic pornography, including but not limited to, homosexual and bestiality pornography was shown in open work areas and on work computers.

40.     Newly hired employees were subjected to a "car wash initiation" which entailed forcing the new employee to ride in a locked vehicle through Defendant's car wash with at least three employees, including but not limited to Gallegos, while Gallegos exposed his genitals and attempted to grope and/or touch the new employee in a sexual manner, including groping the employee's genitals.

41.     A photograph of a penis, next to the ear of a sleeping male employee was taken at in the workplace at Pitre Albuquerque, and shown to various male employees.

42.     Other male employees, including Gallegos, exposed their buttocks and penises on numerous occasions in public work areas.

43.     General Manager Ratliff frequently encouraged and/or requested Gallegos to subject the Charging Parties and male employees to sexual touching, innuendo and /or comments.

44.     Gallegos' inappropriate sexual comments and touching were sufficiently severe and/or pervasive to alter the working conditions of male employees at Pitre Albuquerque.

45.     Sales and Service Managers working with Gallegos knew, or in the exercise of reasonable care should have known of the hostile work environment created by Gallegos.

46.     Sales Manager Ratliff knew of the hostile work environment created by Gallegos.

47.     Sales Manager Ratliff received repeated complaints from at least one of the Charging Parties, and a class of male employees, about the sexual harassment in the workplace.

48.     Sales Manager Ratliff encouraged, condoned, and requested Gallegos to subject Charging Parties and a class of male employees to sexual harassment.

49.     Service Manager Randy Powers knew of the hostile work environment created by Gallegos.

50.     Service Manager Randy Powers received repeated complaints from at least one of the Charging Parties, and a class of male employees, about the sexual harassment in the workplace.

51.     Service Manager Randy Powers directly observed Gallegos subjecting at least one of the Charging Parties, and a class of male employees to sexual harassment in the workplace.

52.     General Manager Ratliff knew of the hostile work environment created by Gallegos.

53.     General Manager Ratliff received repeated complaints from at least one of the Charging Parties, and a class of male employees, about the sexual harassment in the workplace.

54.     General Manager Ratliff directly observed Gallegos subjecting the Charging Parties, and a class of male employees to sexual harassment in the workplace.

55.     General Manager Ratliff encouraged, condoned, and requested Gallegos to subject Charging Parties and a class of male employees to sexual harassment.

56.     Human Resources Director, Tom Stever, knew, or in the exercise of reasonable care should have known of the hostile work environment created by Gallegos.

57.     Human Resources Director, Tom Stever, received repeated complaints from the Charging Parties, and a class of male employees, about the sexual harassment in the workplace.

58.     Defendant's owner, Robert Pitre, knew, or in the exercise of reasonable care should have known of the hostile work environment created by Gallegos.

59.     Defendant's owner, Robert Pitre, received repeated complaints from at least one of the Charging Parties, and a class of male employees, about the sexual harassment in the workplace.

60.     Despite knowledge of the hostile work environment created by Gallegos, Defendants failed to respond in an appropriate manner.

61.     Charging Parties and other male employees complained and/or objected to Gallegos about his conduct.

62.     Despite these complaints, Gallegos did not cease his inappropriate and offensive sexual comments and touching.

63.     Charging Parties and other male employees complained about and/or reported the sexual harassment to various management officials, including without limitation, SM Ratliff, GM Ratliff, Powers, Stever, and Pitre.

64.     Despite the employee complaints and reports of sexual harassment in the workplace, Defendant failed to take prompt, appropriate, and effective remedial action(s).

65.     Instead, Defendant took retaliatory actions against Charging Parties and other male employees who reported and/or complained about the sexual harassment to management.

66.     Charging Party Yob reported the sexual harassment to management as early as April 2010.

67.     Immediately after Yob's first sexual harassment complaint in April 2010, Defendant negatively impacted Yob's car sales earnings.

a.  After Yob's complaints, non-existent costs were added to the vehicles Yob

sold, including but not limited to, non-existent and/or unnecessary repair fees,

and non-existent and/or unnecessary fuel costs.

b.  After Yob's complaints, Defendant required Yob to perform tasks away from

the car lot, preventing Yob from selling cars.

c.  After Yob's complaints, Defendant failed to pay certain commissions owed to

Yob for vehicles he sold, and instead gave the commissions to the dealership

and/or another employee.

d.  After Yob's complaints, Defendant purposely failed to provide Yob with

assistance with his customers, including but not limited to assistance in

obtaining temporary tags, retrieving vehicles from the car lot, and/or

retrieving keys to a car, resulting in lost sales.

e.  After Yob's complaints, Defendant failed to reimburse Yob for standard travel

expenses.

68.  Defendant's managers made retaliatory comments to Charging Parties and other

male employees because of their complaints of sexual harassment, which included but not

limited to:

a.  "You are causing waves, so either deal with it, shut up, or good luck making a

living;"

b.  "You are not being a team player. I hope you intend to be a team player;"

c.  "You are not going to 'rat' on us are you?"

11

      d.  "You can sell as many cars as you want, you will continue to make minimum

          wage."

      e.  "Bob Pitre is worth 100 million dollars and his attorneys will eat you for

          lunch."

69.     On other occasions, the complaints fell on deaf ears and management and Human Resources merely laughed, or made broken promises to remedy the situation.

70.     On other occasions, Charging Parties and other male employees were instructed and/or encouraged by management and/or Owner Robert G. Pitre to take matters in their own hands and cease the harassment by use of physical force.

71.     On or about July 28, 2010, Charging Party Yob was terminated immediately after he adamantly complained about the sexual harassment to SM Ratliff.

72.     On July 31, 2010, Charging Party Yob's employment was reinstated, because SM Ratliff allegedly acted outside the scope of his authority.

73.     August 2, 2010, Defendant verbally reprimanded Gallegos subsequent to Yob's formal written complaint.

74.     After Defendant's alleged remedial measures, Gallegos continued to subject Charging Parties, and other male employees to sexual comments and harassment.

75.     After Defendant's alleged remedial measures, Gallegos continued to inappropriate touch male employees in an unwanted and sexual manner and solicit employees to perform sexual acts with him.

76.    On August 4, 2010, Charging Party Dulkerian made a formal written complaint to management, reporting that Gallegos' attempted to perform oral sex on Dulkerian in front of a customer and Assistant Manager.

77.    On August 6, 2010, Defendant terminated Gallegos.

78.    On August 11, 2010, Charging Party Yob filed a Charge of Discrimination with the EEOC.

79.    Even after Gallegos was terminated from his employment, Defendant continued to subject Charging Party Yob to retaliatory actions, including but not limited to, a substantial decrease in his commission earnings.

80.    On October 20, 2010, Charging Party Yob was constructively discharged from his employment because the conditions were intolerable and untenable.

81.    In January 2011, Charging Party Dulkerian provided information to Defendant's attorney about the hostile work environment, and sexual harassment he and other employees were subjected to by Gallegos.

82.    Immediately after Charging Party Dulkerian provided this information to Defendant's attorney, Dulkerian was subjected to higher level of scrutiny in his work performance and constant threats of termination.

83.    On March 9, 2011, Charging Party Dulkerian filed a Charge of Discrimination with the EEOC.

84.    Because of Gallegos' sexual harassment and Defendant's failure to address Gallegos' sexual harassment, and the retaliatory actions of Defendant,  the working conditions

for many male employees at Pitre Albuquerque, including but not limited to Charging Party Yob, were intolerable, forcing them to resign.

## FIRST CLAIM FOR RELIEF
[Pattern or Practice of Hostile Work Environment – 42 U.S.C. § 2000e-2(a), 2000e-5, 2000e-6]

85.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

86.     Since at least 2007 Defendant discriminated against Charging Party Sasha Dulkerian in violation of Section 703(a), 706, and 707 of Title VII, 42 U.S.C. § 2000e-2(a), 2000e-5, 2000e-6, by creating and tolerating a hostile work environment because of his sex, male.

87.     Since at least February 2010 Defendant discriminated against Charging Party Richard Yob in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), 2000e-5, 2000e-6, by creating and tolerating a hostile work environment because of his sex, male.

88.     Since Gallegos' hire in 1998, Defendant discriminated against a class of male employees in violation of Section 703(a), 706, and 707 of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-5, 2000e-6, by engaging in a pattern or practice of creating, and tolerating a hostile work environment because of their sex, male.

89.     The inappropriate and offensive sexual conduct, as alleged in the preceding paragraphs, was uninvited, unwelcome, and sufficiently severe or pervasive to alter the terms and conditions of employment of Charging Parties and the class of male employees.

90.     Defendant, by and through GM Ratliff, and other supervisors or managers, were aware of the severe or pervasive nature of the sexual harassment occurring at Pitre Albuquerque.

91.     GM Ratliff was a manager and supervisor of the men who were sexually harassed.

14

92.     GM Ratliff requested and encouraged Gallegos to subject the Charging Parties and other male employees to sexual comments, touching and other forms of sexual harassment.

93.     Defendant failed to take reasonable measures to prevent sexual harassment.

94.     Defendant failed to take reasonable measures to promptly correct sexual harassment.

95.     Defendant knew or should have known about the sexual harassment and hostile work environment that existed at Defendant Pitre's car dealership managed by GM Ratliff.

96.     Defendant failed to take reasonable measures to prevent and promptly correct the sexual harassment and hostile work environment at Defendant Pitre's car dealership managed by Ratliff.

97.     At least one member of management at Defendant Pitre's car dealership was directly responsible for the harassment and the creation of a hostile environment for Charging Parties and the class of male employees.

98.     The unlawful employment practices described above were intentional.

99.     The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Charging Parties and a class of male employees.

100.    As a result of the events and actions described above, Richard Yob, Sasha Dulkerian and the class of aggrieved male employees were deprived of equal employment opportunities, suffered emotional distress, and were otherwise adversely affected because of sex.

**SECOND CLAIM FOR RELIEF**
[Constructive Discharge – 42 U.S.C. §§ 2000e-2(a)]

101.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

102.    Defendant constructively discharged Charging Party Yob and a group of male employees, in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating and tolerating a work environment permeated with sexual harassment and retaliatory conduct subsequent to their objection to the sexual harassment.

103.    The working conditions created by the unlawful actions alleged in the preceding paragraphs became so intolerable that a reasonable person would not have continued to subject himself to those conditions.

104.    The unlawful employment practices described above were intentional.

105.    The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Charging Party Yob and a group of male employees who were constructively discharged.

106.    As a result of the events and actions described above, the Charging Party Yob and aggrieved male employees lost wages and benefits, were deprived of equal employment opportunities, suffered and are suffering emotional distress, and were and are otherwise adversely affected because of the sexual harassment and retaliation.

**THIRD CLAIM FOR RELIEF**
[Title VII Retaliation- 42 U.S.C. §2000e-3(a)]

107.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

108.    Charging Party Yob and a class of male employees engaged in conduct protected by Title VII when they reported to management sexually offensive conduct in the workplace.

16

109.     Defendant Pitre engaged in unlawful retaliatory practices in violation of Section

704(a) of Title VII, 42 U.S.C. §2000e-3(a) directed at Charging Party Yob and other male

employees who reported or complained about the workplace sexual harassment.

110.     Defendant's retaliatory practices included, without limitation, lowering

commission earnings, imposing heightened job scrutiny, imposing more onerous work standards,

engaging in retaliatory harassment, retaliatory discharge, and forcing Charging Party Yob and a

class of other male employees to constructively discharge from their employment.

111.     The effect of Defendant's unlawful retaliatory practices was to deprive Charging

Parties and other male employees of equal employment opportunities and otherwise adversely

after their status as employees because of their engagement in protected activity under Title VII.

112.     The unlawful employment practices complained of above were intentional.

113.     The unlawful employment practices complained of above were done with malice

or reckless indifference to the federally protected rights of Charging Parties and a class of male

employees.

114.     As a result of the retaliation, Charging Parties and a class of male employees

suffered harm, including but not limited to lost earnings and benefits, deprived of equal

employment opportunities, suffered and are suffering emotional distress, and were and are

otherwise adversely affected because of sexual harassment and/or retaliation.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, their officers, agents, servants,

employees, successors, assigns, and all persons in active concert or participation with them, from

17

engaging in harassment of employees because of sex and any other employment practice which discriminates on the basis of sex.

B.      Grant a permanent injunction enjoining Defendant, their officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them, from engaging in retaliatory actions, including harassment, against employees because of their engagement in protected activity.

C.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for male employees and which eradicate the effects of their past and present unlawful employment practices, including sex discrimination.

D.      Order Defendant to institute and carry out policies, practices, and programs which eradicate the effects of their past and present unlawful employment practices, including retaliation.

E.      Order Defendant to make whole Charging Party Yob and the aggrieved male employees by providing appropriate back pay and benefits with prejudgment interest in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including, but not limited to, reinstatement and/or front pay in lieu of reinstatement.

D.      Order Defendant to make whole Charging Parties and the aggrieved male employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses, medical expenses, and other pecuniary losses in amounts to be determined at trial.

E.      Order Defendant to make whole Charging Parties and the aggrieved male employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses, in amounts to be determined at trial.

F.      Order Defendant to pay Charging Parties and the aggrieved male employees punitive damages for Defendants' malicious and/or reckless conduct described above, in amounts to be determined at trial.

G.      Grant such other and further relief as the Court deems just, necessary, equitable, and proper in the public interest.

H.      Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED September 29, 2011.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M Street, N.E.
Washington, D.C.  20507

MARY JO O'NEILL
Regional Attorney
EEOC Phoenix District Office
3300 North Central Avenue
Suite 690
Phoenix, Arizona 85012

RITA BYRNES KITTLE
Supervisory Trial Attorney
EEOC Denver Field Office
303 E. 17th Avenue, #410
Denver, CO  80203

*Electronically Filed*

/s/ *Christina A. Vigil*
CHRISTINA VIGIL, Trial Attorney
EEOC Albuquerque Area Office
505 Marquette NW, Suite 900
Albuquerque, New Mexico 87102
(505) 248-5231
christina.vigil@eeoc.gov

LORETTA MEDINA
Senior Trial Attorney

Attorneys for Plaintiff


**PLEASE NOTE:**

**For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys.  Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.**