IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

RICHARD YOB,

        Plaintiff-Intervenor,

SASHA DULKERIAN,

        Plaintiff-Intervenor,

v.                                                        No. CIV 11-875 BB/KBM

PITRE INC., d/b/a Pitre Buick/Pontiac,

        Defendant.

## COURT'S FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

THIS MATTER came on for an evidentiary hearing on December 21, 2011, and having adduced all the evidence, memoranda of law, and proposed findings of fact and conclusions of law submitted by the parties, and being fully advised, the following are the Court's Findings of Fact and Conclusions of Law:

### Findings of Fact

1.    Pitre Inc. is a local car dealership owned by Robert Pitre that has been in business in Albuquerque for over twenty (20) years.

2. **Anna Sanchez is employed with the U.S. Equal Employment Opportunity Commission as a paralegal specialist. [Tr. 9:15-20]. Ms. Sanchez is the lead paralegal assigned to this case. [Tr. 11:1-2].**

3. **Ms. Sanchez' job assignment in this case includes communications with potential class members. [Tr. 11:3-14].**

4. **By the date of the evidentiary hearing on December 21, 2011, Ms. Sanchez had interviewed approximately twenty-eight former and/or current Pitre Inc. employees. [Tr. 13: 5-7].**

5. **Many of the twenty-eight employees expressed to Ms. Sanchez a hesitancy or concern in participating in the EEOC lawsuit as a witness or class member. [Tr. 12:11-14].**

6. **Fourteen of the twenty-eight individuals interviewed by Ms. Sanchez have expressed extreme fear in participating in this lawsuit. [Tr. 12:17-18].**

7. **The EEOC submitted testimony by four individual employees or former employees of Pitre by video tape, with their voices and faces disguised. [Video Transcript of John Doe No. 1-4]. In the video-taped testimony, all four individuals described being subjected to sexual comments and touching by James Gallegos, during their employment at Pitre. [Video 1, Tr. 2:4-2:11; Video 2, Tr. 2:4-10; Video 3, Tr. 2:4-11; Video 4, Tr. 2:4-7].**

8. **The aggrieved individuals, including the four video-taped individuals, are afraid to participate in the EEOC lawsuit because they are afraid of retaliation in their**

**current employment at Pitre and/or of being blackballed in the car dealership industry. [Video 1, Tr.2:12-3:14; Video 2, Tr.2:23-3:2; Video 3, Tr.2:12-24; Video 4, Tr.2:8-13].**

9. **The testimony of John Doe 1 [Doc. 23-3] states that the witness is "… worried about coming forward because dealerships have a tendency to blackball people …. I seen it happen with other people at other dealerships. And it's something that is known around town. Albuquerque is a small town about the car business and everybody knows everybody so it does happen, and I'm worried about that very much."**

10. **The testimony of John Doe 2 [Doc. 23-3] states that he is "… scared because they [Pitres] are very well connected in this business. It's a phone call away. General managers, as a rule, get together during the week at auctions. They talk. It's a phone call away. Ratliff and Mr. Pitre have been in this business for a lot of years." John Doe 2's testimony goes on to state "I received a letter from the EEOC, I called Mr. Ratliff and I -- I asked him, 'What is this about?' He said, 'Come see me.' The second conversation I had with Mr. Ratliff after that, he offered me a special deal on a truck."**

11. **The testimony of John Doe 3 [Doc. 23-3] states in pertinent part "And -- and they pretty much just because of the people that they are, they have -- they have the money and they have the power to make sure you're not employed in -- in that**

industry. And I think that's why a lot of people are scared to go against them … and that's why I'm assuming why no one wants to come forward about it."

12. The testimony of John Doe 4 [Doc. 23-3] states "And the reason I'm hesitant to participate in the EEOC lawsuit or to provide any information because -- is that I am really scared of being blackballed."

13. Defendant Pitre's former employees are fearful that they will be blacklisted in the car dealership community, if they participate in EEOC's suit. [Tr. 17:13-14].

14. Richard Yob complained to Pitre management about James Gallegos' sexual conduct. [Tr. 34:1-8].

15. In response to Mr. Yob's complaints, Pitre management made such comments as "grow up", "if you don't like it , go home", "you can always quit."  [Tr. 35:1:8].

16. Defendant Pitre's employees heard Mr. Yob being summoned to Bob Pitre's office over the P.A. system. [Tr. 39:12-40:7].

17. One dealership hired Richard Yob as a car salesman but rescinded the employment offer after a telephone call with Pitre General Manager Charles Ratliff.  [Tr. 47:14-17].

18. Since the EEOC lawsuit was filed on September 29, 2011, Richard Yob has been unable to obtain work in the car dealership industry in New Mexico. [Tr. Pg. 47].

19. **Mr. Yob provided information about the threats to the Equal Employment Opportunity Commission, his attorney Rachel Berenson, local law enforcement, and the F.B.I. [Tr. 55:19-23, 58:3-25 and Yob's Affidavits, Doc. 15-1 and 23-1].**

20. **When Mr. Yob came back to Albuquerque to meet with the F.B.I., he found his vehicle had been vandalized with a threatening message on the windshield. [Tr. 61:13-15, Yob's Affidavits, Doc. 15-1 and 23-1, Photographs of Yob's Vehicle, Doc. 15-2].**

21. **Because of the threatening messages, Mr. Yob felt forced to leave Albuquerque and reside in another city. [Yob Affidavits, Doc. 15-1 and 23-1].**

22. **Because of the threatening messages, Mr. Yob has contemplated withdrawing from the EEOC lawsuit, and considers his participation in the EEOC lawsuit to be "the worst mistake [he] ever made in [his] life." [Tr. 65:3-17 and Yob Affidavits, Doc. 15-1 and 23-1].**

23. **EEOC reported the death threats to Federal Protective Services, the F.B.I., and counsel for Defendant Pitre. [Christina Vigil Declaration, Doc.23-2].**

24. **Mr. Pitre became aware of the death threats through the attorneys for Defendant Pitre. [Tr. 93:9:-10].**

25. **As of January 4, 2012, Robert Pitre has not, nor has anyone in Pitre Management, been contacted by law enforcement in connection with Mr. Yob's allegations.**

26. **Plaintiff has not presented any evidence that Pitre's attorneys have engaged in, or will engage in, any of the alleged acts that constitute threats of harm, intimidation or retaliation.**

27. **No witnesses or evidence was submitted by Defendant Pitre that effective preventive or remedial measures have been taken to assure non-managerial employees will not engage in retaliatory practices against participants in this suit. [*Id*. and *see generally* Tr. of testimony of Robert. G. Pitre].**

## Conclusions of Law

1. **The Court has jurisdiction over the subject matter of, and the parties to, this action.**

2. **Rule 65 authorizes the Court to order preliminary injunctive relief upon notice to the adverse party. Fed. R. Civ. 65(a)(1).**

3. **An evidentiary hearing was held on December 21, 2011.**

4. **A preliminary injunction may be issued upon showing that (1) the moving party will suffer irreparable injury without issuance of the temporary restraining order; (2) the threatened injury to plaintiff outweighs whatever damage the proposed injunction may cause to the defendant; (3) the injunction would not be adverse to the public interest; and (4) there is a substantial likelihood that plaintiff will prevail on the merits. *Resolution Trust Corp. v. Cruce*, 972 F. 2d 1195, 1198 (10th Cir. 1992) (citing *Tri-State Generation & Transmission Ass.'n v. Shoshone River Power, Inc.*, 805 F. 2d 351, 355 (10th Cir. 1986)).**

5. The Court may consider reliable hearsay in ruling on a preliminary injunction motion. *Mullins v. City of New York*, 634 F. Supp. 2d 373, 387 (S.D.N.Y.), *aff'd*, 626 F.3d 47 (2ᵈ Cir. 2010); S.A. Salsburg, M.M. Mullins, D.J. Capra, FEDERAL RULES OF EVIDENCE 1101.2[8] (2009).

6. Immediate emotional and psychological injury is generally the type of harm considered "irreparable." *Butler v. Rio Rancho Public School District*, CIV No. 01-0466 MV, p. 12 (citing *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F. 2d 701, 710 (9th Cir. 1988)).

7. Viable threats to physical well-being or health constitute irreparable harm. *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250 (10th Cir. 2003); *Edmisten v. Weholtz*, 287 Fed. Appx. 728, 734 (10th Cir. 2008).

8. The testimony and evidence presented by the EEOC demonstrates the immediate fear of potential class members, and the immediate emotional injury suffered by Richard Yob.

9. When balancing the equities among the parties, the Court must consider whether the threatened injury to the movant outweighs the potential harm to the defendant if the injunction issues. *Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).

10. The testimony and evidence presented by EEOC establishes viable economic threats to Richard Yob constituting irreparable harm.

11. **A chilling effect upon a moving party's co-workers in a retaliation case may satisfy the harm requirement for purpose of obtaining injunctive relief. *Marxe v. C.W. Jackson*, 833 F. 2d 1121, 1126 (3d Cir. 1988).**

12. **The testimony and evidence presented by EEOC is sufficient evidence of a chilling effect on the participation of potential class members in the EEOC lawsuit, to establish irreparable harm.**

13. **Upholding the truth-seeking function and providing free access to the courts is in the public interest. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).**

14. **Preventing intimidation of potential witnesses and class member employees is in the public interest. *Mullins v. City of New York, supra.; Rissman, Hendricks & Oliver, LLP v. MIV Therapeutics, Inc.*, 2011 WL 5025206 (D. Mass.)**

15. **The Tenth Circuit has adopted a relaxed standard for proving the likelihood of success. *City of Chanute v. Kousar Gas & Elec. Co.*, 784 F.2d 310, 314 (10th Cir. 1985); *Atchison, Topeka & Santa Fe Ry. Co. v. Lennon*, 640 F.2d 255, 261 (10th Cir. 1981).**

16. **When the other three requirements for a preliminary injunction are satisfied, "it will be enough that the movant has raised questions going to the merits so serious, substantial difficult and doubtful, as to make the issue ripe for litigation." *See also Fed. Legal Lands Consortium ex rel. Robert Estate v. United States*, 195 F. 3d 1190, 1195 (10th Cir. 1999). The Court applies that standard to this case.**

17. **Plaintiff EEOC has met its burden in establishing the elements required for issuance of a preliminary injunctive relief.**

18. **Pitre, like any other defendant in civil litigation, is entitled to investigate the allegations Plaintiff has asserted in this litigation, including interviewing witnesses, and to engage in formal discovery once the Court holds the Rule 16 Scheduling Conference pursuant to the provisions of the Federal Rules of Civil Procedure.** *See Bonanno v. Quizno's Franchise Co., LLC*, **255 F.R.D. 550, 552 (D. Colo. 2009). This must, however, be balanced against the Court's truth-seeking function.**

All tendered findings and conclusions not incorporated herein are deemed Denied.

A Preliminary Injunction consistent with these findings of fact and conclusions of law is entered herewith.

DATED this 26th day of January, 2012.

*/s/ Bruce D. Black*
**BRUCE D. BLACK**
**Chief United States District Judge**