IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

and

RICHARD YOB and SASHA DULKERIAN,

       Plaintiff-Intervenors,

vs.                                                                                           No. 1:11-cv-00875 RB/KBM

PITRE, INC., d/b/a PITRE BUICK/PONTIAC,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

       This case arises out of allegations of severe sexual harassment over a period of twelve years that resulted in a hostile work environment at an Albuquerque car dealership owned by Defendant Pitre, Inc. ("Pitre"). (*See* Complaint and Jury Trial Demand ("Compl."), Doc. 1). The Equal Employment Opportunity Commission ("EEOC") filed suit against Pitre on behalf of the Charging Parties, a class of similarly aggrieved male employees, and the public interest seeking injunctive, compensatory, and punitive relief under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. The Charging Parties, Richard Yob and Sasha Dulkerian, intervened. (*See* Complaint and Jury Trial Demand by Richard Yob, Doc. 26; Complaint for Damages by Sasha Dulkerian, Doc. 51). Two motions are now before the Court: the EEOC's Motion for Bifurcation, filed June 13, 2012 (Doc. 67), and Defendant's Motion to Dismiss, or Alternatively, to Bifurcate Plaintiff's Section 707 Claim, filed June 29, 2012 (Doc. 76).

The pleadings evidence a strong disagreement amongst the parties as to the fundamental legal principles underpinning this lawsuit. In an effort to resolve these disagreements expediently, the Court will consolidate its conclusions regarding the arguments raised in the motions into one order. First, the Court will discuss the legal standards and statutory framework underlying the parties' disputes. Next, the Court will address the EEOC's authority to proceed in this action and the propriety of its complaint. Finally, the Court will resolve the method by which the trial of this matter will proceed. Ultimately, the Court **DENIES** Pitre's request that the EEOC's § 707 claim be dismissed or bifurcated and **GRANTS** the EEOC's motion to bifurcate.

## I.     Background

In 1998, Pitre hired James Gallegos as a lot attendant for its Albuquerque dealership. (Compl. at ¶¶ 20, 31). Gallegos remained in that position until Pitre terminated his employment on August 6, 2010. (*Id.* at ¶¶ 20, 77). Throughout the course of his employment, Gallegos subjected a group of male employees to extreme and frequent sexual harassment, including but not limited to exposing his genitals to male employees, soliciting male employees to engage in sexual acts, attempting to remove the clothing of other male employees, touching or attempting to touch the genitals of male employees, biting male employees' penises, and forcing new male employees to ride in a locked car with him and others while exposing his genitals and groping the new employee. (*See id.* at ¶¶ 31-42). Gallegos' conduct was committed openly in the workplace, was encouraged by Pitre's general manager, and was known or should have been known by other managers, the human resources director, and the owner. (*See id.* at ¶¶ 43-59).

The EEOC further contends that Pitre took retaliatory actions against male employees who reported or complained about Gallegos' conduct and the work environment, including negatively impacting commission earnings, failing to reimburse for travel expenses, making

retaliatory comments, and terminating at least one man from his employment. (*Id.* at ¶¶ 65-71). The retaliation continued even after Gallegos was terminated from his employment in August of 2010. (*Id.* at ¶¶ 79-82). The working environment was so intolerable that it forced many of Pitre's male employees to resign. (*Id.* at ¶ 84).

On August 11, 2010, Richard Yob, a male employee of Pitre Albuquerque from February of 2010 through October 20, 2010, filed a Charge of Discrimination with the EEOC. (*Id.* at ¶¶ 25, 78, 80). On March 9, 2011, Sasha Dulkerian, a male employee of Pitre Albuquerque since September of 2007, filed a Charge of Discrimination with the EEOC. (*Id.* at ¶¶ 27, 83). The EEOC conducted an investigation regarding the allegations made in the charges, issued letters of determination as to both charges, engaged Pitre in informal methods of conciliation, and provided Pitre with notice once the EEOC determined that conciliation efforts had failed. (*Id.* at ¶¶ 10-15).

On September 29, 2011, the EEOC filed this lawsuit on behalf of the Charging Parties and a group of aggrieved male employees based upon the hostile work environment and retaliation at the Pitre Albuquerque car dealership. (*Id.* at pp. 1-2). The EEOC asserts that the suit is "authorized and instituted pursuant to Sections 706(f)(1), 706(f)(3), and 707 of Title VII of the Civil Rights Act of 1964 . . . ." (*Id.* at ¶ 1). The Complaint alleges that Pitre maintained a pattern or practice of tolerating and encouraging sexual harassment in the workplace, resulting in a hostile work environment, constructive discharge, and retaliation. (*Id.* at ¶¶ 85-114). For relief, the EEOC requests the following: (1) a permanent injunction enjoining Pitre from engaging in sexual harassment against employees; (2) a permanent injunction enjoining Pitre from engaging in retaliatory actions because of employees' protected activity; (3) a court order requiring Pitre to institute and carry out policies and programs to provide equal employment opportunities for male

employees and to eradicate the effects of sex discrimination and retaliation; (4) back pay, benefits, prejudgment interest, reinstatement or front pay in lieu of reinstatement for the aggrieved male employees; (5) compensation for past and future pecuniary losses resulting to the aggrieved individuals from Pitre's unlawful employment practices; (6) compensation for past and future nonpecuniary losses resulting to the aggrieved individuals from Pitre's unlawful employment practices; (7) punitive damages; and (8) costs. (*Id.* at pp. 17-19).

The EEOC and Pitre have filed separate motions addressing the EEOC's authority to use the pattern-or-practice framework and the process by which this case should be tried. Pitre has moved to dismiss the EEOC's § 707 claim pursuant to Rule 12(b)(6) or to bifurcate the §§ 706 and 707 claims on the bases that §§ 706 and 707 are distinct, the EEOC did not plead a separate claim under § 707, and the EEOC failed to identify a specific employment policy or practice to tie the discrete employment decisions together into a systemic procedure. (Doc. 76). The EEOC opposes the motion, contending that Title VII allows it to allege a pattern or practice of discrimination under both §§ 706 and 707, that it sufficiently pled its hostile work environment claim, and that Pitre has not met the burden to support its bifurcation request. (EEOC's Brief in Opposition of Defendant's Motion to Dismiss and Alternative Request to Bifurcate Plaintiff's Section 707 Claim, Doc. 86).

The EEOC has requested that discovery and trial be bifurcated into two phases. (Doc. 67). The first phase of trial would resolve the pattern-or-practice claim and determine whether punitive damages are available, and the second would apply a rebuttable presumption of discrimination if the pattern or practice is proven and address the individual claims and damages. Pitre objects to the EEOC's proposed bifurcation, arguing that bifurcation is inappropriate in a § 706 or hybrid §§ 706 and 707 claim, that it would strip Pitre of its right to present a defense as to

liability, and that it is inappropriate in a case alleging a pattern or practice of sexual harassment culminating in a hostile work environment. (Defendant's Response in Opposition to the EEOC's Motion to Bifucate, Doc. 75).

Pitre requested oral argument on both motions, but the Court has determined that oral argument would not assist the resolution of these matters. Thus, the issues before the Court shall be decided on the briefs. *See* D.N.M.LR-Civ. 7.6(a) ("A motion will be decided on the briefs unless the Court sets oral argument.").

## II.   Legal Standards

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. A complaint need not include "detailed factual allegations," but it must set forth a short and plain statement of the facts sufficient to give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-pleaded factual allegations as true, and determine if the plaintiff is plausibly entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted). Without weighing the evidence, the court must evaluate whether it is plausible, and not merely possible, that the plaintiff is entitled to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Federal Rule of Civil Procedure 42 permits the bifurcation of issues or claims in a case "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ." When a court

considers whether to bifurcate a trial, efficient judicial administration is the controlling interest. CHARLES ALAN WRIGHT ET AL., 9A FEDERAL PRACTICE & PROCEDURE § 2388 (3d ed.) (citations omitted). The party seeking separate trials bears the burden of proving that bifurcation is necessary. *Id.* (citations omitted). Nevertheless, it is well-established that the question of whether separate trials should be ordered and how the case should be bifurcated are matters left to the sound discretion of the trial court. *See Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003) (citations omitted); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999) (citations omitted).

### III. Title VII Discrimination Claims

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In Title VII, as amended, Congress empowered the EEOC to prevent unlawful employment practices under two separate sections. *See* 42 U.S.C. §§ 2000e-5 & 2000e-6.

Section 706 of Title VII authorizes the EEOC to sue an employer and secure relief on behalf of a person or group of aggrieved persons for an employer's unlawful employment practice. 42 U.S.C. § 2000e-5. In a suit brought pursuant to § 706, the EEOC "stands in the shoes of those aggrieved persons in the sense that it must prove all of the elements of their sexual harassment claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 929 (N.D. Iowa 2009). Nevertheless, the EEOC remains the "master of its own case[.]" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002). In 1991, Congress expanded the remedies available to plaintiffs bringing claims pursuant to § 706 from purely equitable remedies

to include punitive and compensatory damages. 42 U.S.C. § 1981a(a)(1); *see also Waffle House*, 534 U.S. at 287 (citation omitted).

Section 707 of Title VII authorizes the EEOC to sue when it "has reasonable cause to believe that [an employer] is engaged in a pattern or practice" of unlawful discrimination. 42 U.S.C. § 2000e-6(a). This type of action is designed to "eradicate systemic, company-wide discrimination . . . ." *EEOC v. Mitsubishi Motor Mfg. of Am.*, 990 F. Supp. 1059, 1070 (C.D. Ill. 1998). Thus, the focus is whether the unlawful employment action constituted the standard operating procedure or regular practice of the company, and the EEOC brings the case on behalf of the public interest rather than an individual aggrieved person. Accordingly, the 1991 amendment does not apply to § 707 claims, and the relief available in § 707 actions is limited to equitable relief including injunctions and back pay. *See* 42 U.S.C. §§ 1981a(a)(1), 2000e-6(a). Generally, cases alleging a pattern or practice of discrimination are tried under the bifurcated model established in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).

There are two types of Title VII employment discrimination: disparate impact, which involves a facially neutral employment practice resulting in disproportionate impact, and disparate treatment, which involves intentionally discriminatory employment practices. *See Santana v. City & Cnty. of Denver*, 488 F.3d 860, 866-67 (10th Cir. 2007) (discussing differences between disparate treatment and disparate impact claims). At issue here are claims of sexual harassment and retaliation, both of which fall under the category of disparate treatment. Accordingly, the EEOC must prove that Pitre had a discriminatory motive or intent. In order to prove that Pitre acted with a discriminatory motive, different methods of proof are available.

The first, advocated by Pitre as the sole model available for individual claims of discrimination, is commonly known as the *McDonnell Douglas* burden-shifting framework.

Under this framework, the plaintiff must first establish a *prima facie* case of discrimination in violation of Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the *prima facie* case is established, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant proffers such a reason, the burden returns to the plaintiff to show that the defendant's nondiscriminatory reason is a pretext. *Id.* at 804. This framework is commonly used in private, non-class action employment discrimination cases.

The second model applies when the plaintiff alleges a pattern or practice of discrimination and is called the *Teamsters* model. Here, the plaintiff has a heightened initial burden to establish that: (1) there was unlawful discrimination; and (2) the discrimination "has been a regular procedure or policy followed by an employer . . . ." *Teamsters*, 431 U.S. at 360. Once that showing is made, it is assumed that any particular employment decision during the period in which the discriminatory practice was ongoing was made in accordance with that practice. *Id.* at 362. Thus, the burden rests on the employer to show that an individual employed during the course of the policy was not subjected to discrimination. *Id.* When this framework is used, the proceedings are often bifurcated into a liability phase, during which the plaintiff must meet the heightened initial burden, and a damages phase, in which the scope of individual relief is determined and a presumption of liability applies. *Id.* at 361.

While *McDonnell Douglas* and *Teamsters* constitute the two models most commonly discussed, it is of note that this Court has not found a single Tenth Circuit case that applies either framework to a sexual harassment hostile environment case. In fact, it appears that the Tenth Circuit does not discuss hostile work environment claims in terms of shifting burdens at all. *See EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 797-800 (10th Cir. 2007). The elements required to

establish a hostile work environment claim differ significantly from other types of employment discrimination, and the trier of fact is required to consider the totality of the circumstances. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1170 (10th Cir. 2007). To establish a hostile work environment due to sexual harassment, the plaintiff must present evidence that: (1) he "is a member of a protected group;" (2) he "was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (quoting *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005)) (alteration omitted). The plaintiff must also identify a basis for employer liability, one of which is that the employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Id.* (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998)). As with any other legal claim, the employer may question the existence of the *prima facie* case and attack any element thereof. *See id.*

### IV.  The EEOC May Proceed under the Pattern-or-Practice Framework

Though Title VII was enacted nearly fifty years ago, systemic harassment law remains in its infancy. *See* Jason R. Bent, *Systemic Harassment*, 77 TENN. L. REV. 151, 151-53 (Fall 2009). There have been only a handful of federal district court cases brought by the EEOC alleging that an employer engaged in a pattern or practice of sexual harassment, and appellate courts have not had cause to rule on the basic legal issues presented by systemic harassment litigation. While the federal district courts have frequently disagreed over how these cases should be litigated and what procedures apply, all concur that an employer's pattern or practice of tolerating sexual harassment is actionable under Title VII. *Id.* at 171 (citations omitted); *see, e.g.*, *EEOC v.*

*Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 655-56 (E.D. Va. 2008); *Mitsubishi*, 990 F. Supp. at 1070 ("This Court does not need to make a great leap of faith to state the obvious: Title VII authorizes a pattern or practice action for sexual harassment."). It is also clearly established that the EEOC may sue an employer on behalf of a group of aggrieved persons without certifying the case as a class action or complying with the prerequisites of Federal Rule of Civil Procedure 23. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 333-34 (1980).

Pitre does not question whether the EEOC's systemic harassment claim is cognizable as a general matter; instead, Pitre attacks the EEOC's authority to simultaneously bring a claim of a pattern or practice of discrimination and seek individual, monetary relief. Pitre attempts to persuade this Court that the EEOC's authority to bring suit under Title VII is clearly delineated and well-defined. A basic review of the statute demonstrates that Pitre's position is far from accurate. In fact, in an effort to ensure that the EEOC could prevent unlawful employment practices, Congress opted to give the EEOC broad and overlapping authority. *See id.* at 325-26 (discussing the expansion of the EEOC's enforcement powers in 1972 and stating, "[i]n so doing, Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights."). Sections 706 and 707 clearly overlap, providing the EEOC with multiple routes to bring employers who engage in unlawful discrimination to justice.

The Sixth Circuit recently issued a ruling discussing this very issue, albeit in the context of a sex discrimination case. In *Serrano v. Cintas Corp.*, --- F.3d ----, 2012 WL 5458182 (6th Cir. Nov. 9, 2012), the EEOC filed a complaint alleging that an employer engaged in a pattern of sexual discrimination in its hiring practices under its § 706 authority, and the defendant moved for judgment on the pleadings. *Serrano*, --- F.3d at ----, 2012 WL 5458182 at *5. The district court agreed with the defendant, holding that the EEOC cannot pursue a claim under the pattern-

or-practice framework pursuant to § 706 and must plead with specificity its intent to rely on the *Teamsters* framework. *Id.* The Sixth Circuit thoroughly considered the question of whether the EEOC may only employ the *Teamsters* framework when it proceeds under § 706 and concluded that "the EEOC's enforcement authority is not so limited." *Id.* at *6.

While recognizing that § 706 does not explicitly authorize a pattern-or-practice suit, unlike § 707, the Sixth Circuit concluded that relevant Supreme Court precedent suggested that the inclusion of that language in § 707 simply limited the scope of the EEOC's authority to act under § 707. *Id.* In determining that the EEOC may pursue its claim under the pattern-or-practice framework pursuant to its § 706 authority, the court acknowledged some overlap between §§ 706 and 707. It hypothesized that Congress wanted to provide the EEOC with different vehicles for initiating Title VII suits and concluded that different remedies were appropriate given that "the need for compensatory and punitive damages diminishes when the EEOC is not seeking compensation for a specific victim of discrimination." *Id.* at *7. Finally, the court dismissed the defendant's argument that allowing the EEOC to pursue its claims using the pattern-or-practice method under § 706 would deprive the defendant of the opportunity to present a defense and allow the EEOC to "have its cake and eat it too[.]" *Id.* at *8. The court cogently explained that the *Teamsters* framework constitutes merely a different, not easier, standard of proof, which requires the plaintiff to bear a more arduous initial burden. *Id.* Because of the heavier initial burden, a presumption arises; the defendant may, nevertheless, rebut the presumption. *Id.* In summary, the only appellate court to squarely address the issue concluded that the EEOC can use the pattern-or-practice theory to prosecute a sex discrimination claim pursuant to its § 706 authority.

Pitre's arguments in support of its motion to dismiss are quite similar to those expressed by the defendant in *Serrano*. For the same reasons expressed in the well-reasoned Sixth Circuit opinion, this Court rejects Pitre's arguments. The Supreme Court has expressed reluctance, "absent clear congressional guidance, to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute." *Gen. Tel.*, 446 U.S. at 331. While the *General Telephone* Court faced a different question related to EEOC actions under § 706, specifically whether to apply class certification requirements, that reluctance to impose additional limitations on § 706 actions is equally applicable here. Section 706 does not prevent the EEOC from seeking relief for individuals and the general public under a pattern-or-practice theory.

Pitre only asks the Court to dismiss the EEOC's claim to the extent that it relies on the pattern-or-practice method of proof, so the determination that the EEOC may proceed under this framework pursuant to its § 706 authority ends the inquiry. The Court does note that the EEOC asserted that its authority to bring suit arises under both §§ 706 and 707 and that Pitre requested that the individual claims be bifurcated from the pattern or practice determination. It seems that the EEOC mentioned both sections in an abundance of caution, given that all relief sought can be achieved through the remedies available under § 706. It further appears that all of Pitre's arguments in support of bifurcation are premised on the incorrect notion that a claim brought under the authority of § 706 would proceed pursuant to a different evidentiary framework than a claim under § 707. Thus, the Court need not consider the arguments regarding the hybridization of §§ 706 and 707.[1] The Court denies Pitre's requested model of bifurcation because it is premised on an incorrect interpretation of the law.

---

[1] It is possible that the EEOC will rely on § 707 in an effort to skirt the 300-day statutory limitations period. At this time, though, the Court need not determine the EEOC's authority to bring suit under §§ 706 and 707 simultaneously.

**V.     The EEOC Need Not Plead Intent to Rely on Pattern-or-Practice Framework**

Pitre next asks this Court to dismiss the EEOC's claim at least in part because the EEOC did not specifically plead its intent to rely on the pattern-or-practice method of proof. (Doc. 76 at 14-15). As discussed by the EEOC, the Supreme Court has clearly held that an employment discrimination complaint is sufficient if it describes the specific unlawful employment action, the nature of the discrimination, and the time period. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In *Swierkiewicz*, the Court was confronted with the question of whether a plaintiff in an employment discrimination lawsuit must plead specific facts establishing a *prima facie* case of discrimination under the *McDonnell Douglas* framework. *Id.* at 508. The Court announced that there was no such requirement, noting that the precise theory of the case may not become entirely clear to the plaintiff until discovery is underway or completed. *Id.* at 512. Though *Swierkiewicz* was decided before *Twombly*, this portion of the decision remains good law. *See Twombly*, 550 U.S. at 569-70 (recognizing and not overruling *Swierkiewicz*'s conclusion that a *prima facie* case of discrimination need not be plead in the complaint); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).

In the Sixth Circuit's recent decision, the court looked to *Swierkiewicz* and found that the case "compels the conclusion" that a plaintiff is not required to plead the framework that he will use to prove his case. *Serrano*, --- F.3d at ----, 2012 WL 5458182 at *9. If a plaintiff need not indicate whether he intends to rely on direct or circumstantial evidence to prove his case in the complaint, the court reasoned, certainly he cannot be required to indicate which evidentiary framework he intends to employ. *Id.* The Court acknowledged that "[a] contrary holding would impose an even more rigid pleading requirement than that which the Supreme Court rejected in *Swierkiewicz*." *Id.*

13

This Court agrees with the rationale and decision of the Sixth Circuit: the EEOC in a Title VII case is not required to plead the evidentiary framework on which it intends to rely to prove its case. It need only set forth sufficient facts to render its claim for relief under Title VII plausible. The complaint here makes clear that the EEOC intends to prove that James Gallegos' conduct created a hostile work environment over the ten year period of his employment, that Pitre knew or should have known of the environment, that Pitre had a pattern of condoning the hostile environment, and that a group of male individuals were injured as a result. Pitre's motion to dismiss is, accordingly, denied.

## VI. Bifurcation of Trial

Having established that the EEOC may proceed in this case as presented in its complaint, the Court will explain the method by which this case will be tried. There are two causes of action in the EEOC's complaint: hostile work environment due to sexual harassment and retaliation. It appears that the EEOC intends to prove both under the pattern-or-practice framework. While retaliation claims can be heard under the ordinary bifurcated model of *Teamsters*, sexual harassment claims, because they involve both objective and subjective elements, cannot.

A thorough review of district court decisions in systemic harassment cases demonstrates that all federal district courts to confront this issue have ordered a bifurcated trial, save one. *See EEOC v. JBS USA, LLC*, No. 10–cv–02103–PAB–KLM, 2011 WL 3471080, at *5-6 (D. Colo. Aug. 8, 2011). Each of these courts also acknowledged that no preexisting framework for the order of proof applicable to employment discrimination is particularly well-suited to cases involving sexual harassment. Both the *McDonnell Douglas* and *Teamsters* approaches were developed long before sexual harassment was recognized as a viable claim under Title VII. Without any further direction from our appellate courts, lower courts have been left trying to

squeeze a square peg into a round hole – sexual harassment hostile work environment claims simply do not fit into either approach. Thus, this Court is left to design the most appropriate format for trial given the parties' claims and the dual goals of avoiding prejudice to either party while expediting and economizing the trial.

      *a. Approaches to the Order of Proof*

In an attempt to discern the appropriate order of proof for this systemic harassment litigation, a review of prior district court decisions is in order. The only court that refused to allow the bifurcation of a hostile work environment claim was the district court in *JBS USA*. 2011 WL 3471080 at *5. The court determined that it would be inefficient to bifurcate that claim because, in that case, there were clear differences among the individuals in the group of aggrieved persons and in the nature of harassment suffered. *Id.* Though bifurcation was denied, the court declined to determine what burden-shifting framework the jury would ultimately apply. *Id.* at *6.

Under the remaining approaches, the *Teamsters* framework is modified to accommodate the subjective element of the claim. At Phase I, the burden rests with the plaintiff to establish a pattern or practice of harassment based on the objective elements of sexual harassment, including that "an objectively reasonable person would find that, as a whole, the environment within the company is hostile . . . ." *Mitsubishi*, 990 F. Supp. at 1078; *see also EEOC v. Int'l Profit Assocs., Inc.*, No. 01 C 4427, 2007 WL 3120069, at *17 (N.D. Ill. Oct. 23, 2007) (hereinafter "*IPA*"); *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847, 875 (D. Minn. 1993). The employer may present defenses as to each objective element. If the pattern or practice is established, prospective relief is available. *Jenson*, 824 F. Supp. at 875.

To recover damages, the case proceeds to a second phase. Under two similar models, each individual "potential victim" or member of the "affected class" is entitled to a rebuttable presumption that the objective elements of the claim are satisfied at Phase II. *Mitsubishi*, 990 F. Supp. at 1078; *Jenson*, 824 F. Supp. at 876. The sole difference is that, according to the *Jenson* approach, each individual bears a burden to show that she was "as affected as the reasonable woman would have been." 824 F. Supp. at 876 (citation omitted). Under *Mitsubishi*, each individual is also required to testify that the harassment was unwelcome; because the court found that burden of production minimal, though, the court held that the employer must bear "[t]he burden of coming forward with evidence to challenge the plaintiff's assertion that the alleged harassment was 'unwelcome.'" 990 F. Supp. at 1078. The final model requires the EEOC to prove both the objective and subjective components as to each individual claimant seeking monetary damages, though the burden regarding the basis for the company's liability (for example, that the company should have known of the harassment and failed to act) shifts to the defendant. *IPA*, 2012 WL 3120069 at *13-15.

   b. *Approaches to Punitive Damages*

Courts that have considered whether punitive damages should be addressed during Phase I or Phase II have taken different approaches. The first, advocated by the EEOC as well as the district court in *EEOC v. Dial Corp.*, 259 F. Supp. 2d 710 (N.D. Ill. 2001), allows Phase I to be divided into two parts, each of which is tried before the same jury. *Dial Corp.*, 259 F. Supp. 2d at 713. In the first part of Phase I, the jury determines whether and when a pattern or practice of tolerating sexual harassment existed. *Id.* If the first part terminated in the EEOC's favor, the jury is then asked to determine "whether the pattern or practice was done with malice or reckless indifference to the federally protected rights" of the aggrieved group, "including an amount to be

16

awarded to the aggrieved persons" as punitive damages. *Id.* Following those determinations, a second jury resolves the issue of compensatory damages for each individual, including an appropriate amount of punitive damages. *Id.* at 714. A substantially similar approach allows the Phase I trier of fact to determine whether the plaintiffs are eligible for punitive damages and the Phase II trier of fact to determine the amount to which each individual is entitled. *EEOC v. Outback Steak House of Fla., Inc.*, 576 F. Supp. 2d 1202, 1205-07 (D. Colo. 2008).

The other approach, which Pitre would prefer if the trial is bifurcated as the EEOC requests, limits any punitive damages inquiry to Phase II. The *IPA* Court adopted this approach, looking to precedent that addressed the primary relief sought in employment discrimination cases to determine whether a class could be certified. 2007 WL 3120069 at *9-10 (citations omitted). It focused on language from appellate court decisions indicating that punitive damages may only be awarded if an individual plaintiff establishes that the defendant possessed malice or reckless indifference toward that particular plaintiff's federal rights. *Id.* at *10 (quoting *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 579 (7th Cir. 2000)). The *IPA* Court concluded that such precedent foreclosed any possibility that punitive damages could be determined in Phase I. *Id.* at *11.

   *c. Bifurcation in this Matter*

Having considered the merits of each approach, the Court finds the *Jenson* approach to bifurcation, as it is explained above, to be the most appropriate and efficient in this matter. First, the Court notes that the environment to which Pitre's male employees were subjected during James Gallegos' employment is likely very similar, given that the EEOC has only alleged that there was one harasser. Thus, because the EEOC's claims fall within the same course of conduct and do not present great individual differences, bifurcation of this matter would increase the

efficiency of the trial and is appropriate. Given the Court's conclusion that the EEOC may employ the pattern-or-practice method of proof for both its general and individual claims in this case, requiring the EEOC to prove the objective elements at both phases of trial would result in duplicative findings and inefficiency. The *Jenson* model applies the appropriate presumptions, allowing the jury's findings as to the objective elements to carry through to Phase II while still requiring the plaintiff to prove the subjective element of its case. This model also has the imprimatur of the Eighth Circuit and is the only method by which a systemic harassment case was actually tried. *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1299 (8th Cir. 1997) (discussing the district court's decision to apply a burden-shifting framework after the plaintiff established a pattern or practice of hostile environment sexual harassment and ordering the special master to apply that framework in evaluating individual constructive discharge claims).

The Court further finds the approach to punitive damages utilized by the district court in *Outback* most appropriate. While an award of punitive damages is a form of individual relief, punitive damages focus on the conduct of the defendant and are intended to punish and deter him from committing future violations. *See Waffle House*, 534 U.S. at 294-95 (citations omitted); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 965 (10th Cir. 1993) ("Punitive damages . . . focus on the defendants' conduct."); *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 474 (5th Cir. 1986). However, a plaintiff may not receive an award of punitive damages without proving that he suffered actual damages. *See Melton v. City of Okla. City*, 879 F.2d 706, 732 (10th Cir. 1989). It is certainly true that the trier of fact at Phase I will have the best insight into the totality of Pitre's conduct. However, even after Phase I, liability will not be fully established and, of course, each individual's actual damages have yet to be considered. Deferring the issue of punitive damages to Phase II, though, would make it more difficult for the trier of fact to focus

on Pitre's conduct and require overlapping testimony. Thus, the clear solution is to allow the Phase I jury to make findings as to whether Pitre's policies were malicious or in reckless disregard of male employees' rights. If the Phase I jury determines that Pitre was malicious or reckless, then the aggrieved employees are eligible for punitive damages upon additional individual showings. Pitre may rebut the Phase I findings on an individualized basis.

Accordingly, the trial of this matter will proceed in the following manner. At Phase I, the trier of fact will determine whether Pitre maintained a pattern or practice of condoning a sexually harassing hostile work environment, whether Pitre had a policy of retaliating against those who complained of the environment, and whether Pitre did so with malice or reckless disregard of the aggrieved employees' federally protected rights. The EEOC will be required to establish a *prima facie* case of retaliation as to the group of aggrieved persons. It must also satisfy all objective elements of its hostile work environment claim, including the basis for employer liability. Finally, it must show, as to both causes of action, that the unlawful employment practice "was the company's standard operating procedure [–] the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336. Pitre will be permitted to rebut each of these elements, although it will not be entitled to attack each individual's right to relief during Phase I. Its right to present a defense is, therefore, not impeded by this procedure. If the EEOC is successful at Phase I, the jury may impose prospective relief against Pitre.

Then, at Phase II, the availability and extent of individual relief will be determined. A presumption will apply that each individual within the relevant time period satisfied the objective elements of his claims. However, each aggrieved person will bear the burden to prove that he was subjected to unwelcome workplace harassment and retaliation. This may consist merely of

his testimony. Pitre may then present individualized defenses to liability. Pitre may also rebut all Phase I findings on an individualized basis.

To the extent the parties request a ruling on the bifurcation of discovery, the Court will refer this determination to Magistrate Judge Karen B. Molzen. The expertise of Judge Molzen in the realm of discovery will allow her to determine a reasoned, appropriate discovery plan that balances the concerns of expediency with Pitre's right to present a full and complete defense. Once a discovery plan is established, and upon the request of the parties, the Court will determine whether separate juries will be used for the different phases of trial.

**THEREFORE,**

**IT IS ORDERED** that the EEOC's Motion for Bifurcation (Doc. 67), filed June 13, 2012, is **GRANTED**, and Defendant's Motion to Dismiss, or Alternatively, to Bifurcate Plaintiff's Section 707 Claim (Doc. 76), filed June 29, 2012, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**